UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| COMMUNITIES FOR A HEALTHY BAY, a Washington non-profit corporation, | CASE NO. 3:25-cv-05535-LK |
| Plaintiff, | CONSENT DECREE |
| v. | |
| TEMCO, LLC, a Foreign Limited Liability Company, | |
| Defendant. | |

## I.    STIPULATIONS

Plaintiff Communities for a Healthy Bay ("Communities") and Defendant Temco, LLC ("Temco") agree and stipulate as follows:

1.    Communities is a non-profit membership organization dedicated to protecting and preserving the natural environment in western Washington State, including protecting Commencement Bay in Puget Sound, its tributaries, and the aquatic species that use and rely on those waters for habitat and sustenance.

CONSENT DECREE - 1

2.      Temco owns and operates an industrial facility at or near 550 Dock Street, Tacoma, Washington 98402 and 11 Schuster Parkway, Tacoma, Washington 98402 (hereinafter referred to as "the Facility").

3.      The Facility is a grain export terminal that receives grain, stores grain in grain elevators, and then loads grain onto vessels for export via Commencement Bay in Puget Sound.

4.      Temco discharges stormwater associated with industrial activity from the Facility under a National Pollutant Discharge Elimination System ("NPDES") Permit No. WAR007651 issued by the Washington State Department of Ecology ("the Permit").

5.      Under section 505 of the Clean Water Act, 33 U.S.C. § 1365, Communities sent Temco a notice of intent to sue letter dated April 4, 2025 ("Notice Letter"), and filed a complaint against Temco on June 16, 2025 ("Complaint"), alleging that Temco is in violation of certain terms and conditions of the Permit and that Temco is violating section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), by discharging pollutants, including grain and grain dust, from the Facility to waters of the United States without an NPDES permit.

6.      Communities' Complaint seeks declaratory and injunctive relief, the imposition of civil penalties, and an award of litigation expenses, including attorney and expert fees, for Temco's alleged violations of the Permit and the Clean Water Act, 33 U.S.C. § 1251 *et seq.* ("CWA").

7.      Temco and Communities (individually a "Party" and collectively the "Parties") agree and stipulate that a new violation of section 301(a) of the CWA, 33 U.S.C. § 1311(a), occurs, and that a new CWA citizen suit claim for unpermitted discharges accrues, on the date when an unauthorized discharge of pollutants from a point source occurs.

8.      The Parties agree that settlement of this matter is in the best interest of the Parties and the public and that entry of the Consent Decree below without additional litigation is the most appropriate means of resolving this action.

CONSENT DECREE - 2

9. The Parties negotiated these Stipulations and Consent Decree in good faith; they agree to abide by and implement these Stipulations and the Consent Decree in good faith; they agree not to take steps to undermine these Stipulations and the Consent Decree; and they agree to resolve any concerns about compliance with these Stipulations and the Consent Decree through the dispute resolution process in Paragraph II.11 of the Consent Decree below when possible.

10. Each Party represents and warrants that it is capable of timely satisfying all obligations imposed upon it by the Consent Decree below and that it intends to comply with all such obligations.

11. Each Party has sought and obtained the advice of its own independent legal counsel before agreeing to be bound by these Stipulations and the Consent Decree.

12. The Parties agree these Stipulations and Consent Decree are fair, reasonable, equitable, do not violate the law or public policy, come within the scope of the pleadings, and further the broad objectives upon which Communities based the Complaint. *See Sierra Club, Inc. v. Elec. Controls Design, Inc.*, 909 F.2d 1350, 1355 (9th Cir. 1990).

13. The Parties stipulate to entry of the Consent Decree below without trial, adjudication, or admission of any issues of fact or law regarding the claims and allegations set forth in Communities' Notice Letter and Complaint.

14. The Parties agree the Court has jurisdiction over the Parties and the subject matter of this action under section 505(a) of the CWA, 33 U.S.C. § 1365(a).

15. These Stipulations and the Consent Decree constitute the entire agreement between the Parties regarding this case. There are no other or further agreements, written or verbal.

16. The Parties recognize that, pursuant to section 505(c)(3) of the CWA, 33 U.S.C. § 1365(c)(3), no consent judgment can be entered in a CWA citizen suit in which the United States is not a party prior to forty-five (45) days following the receipt of a copy of the proposed consent

judgment by the U.S. Attorney General and the Administrator of the U.S. Environmental Protection Agency. Therefore, upon the filing of these Stipulations and this proposed Consent Decree by the Parties, Communities will serve copies upon those officials.

17.     If for any reason the Court should decline to enter this Consent Decree as an Order of the Court in the form presented, the Parties stipulate that this Consent Decree and the settlement embodied herein shall be voidable at the sole discretion of either Party. If voided, the Parties agree to continue negotiations in good faith in an attempt to cure any objection raised by the Court to entry of this Consent Decree.

18.     The undersigned representative for each Party certifies that they are fully authorized by the Party they represent to enter into the terms and conditions of these Stipulations and proposed Consent Decree and to legally bind the Party and any successors in interest to it.

SO STIPULATED AND AGREED.

| COMMUNITIES FOR A HEALTHY BAY | TEMCO, LLC |
|---|---|
| By: [Signature in original] | By: [Signature in original] |
| Melissa Malott, Executive Director | Vincent Hofer, General Manager |
| Dated: December 8, 2025 | Dated: December 5, 2025 |

## II.   ORDER AND DECREE

THIS MATTER came before the Court on the foregoing Stipulations of the Parties and the Parties' Joint Motion for Entry of Consent Decree. Having considered the stipulations, the joint motion, and the terms and conditions below, the Court hereby ORDERS, ADJUDGES, and DECREES as follows:

1.     **Jurisdiction.** This Court has jurisdiction over the Parties and subject matter of this action pursuant to section 505(a) of the CWA, 33 U.S.C. § 1365(a).

2.     **Effective Date.** This Consent Decree shall take effect on the date it is entered as

CONSENT DECREE - 4

an Order of the Court ("Effective Date").

3. **Termination Date.** This Consent Decree shall terminate five (5) years after the Effective Date or upon Temco's complete performance of all obligations in Paragraphs II.7 and II.9 of this Consent Decree, whichever occurs later ("Termination Date").

4. **Applicability.** Communities and Temco are subject to and shall abide by the terms and conditions of this Consent Decree. This Consent Decree shall inure to the benefit of, and be binding upon, the Parties and their successors, assigns, officials, agents, representatives, officers, directors, and employees. Changes in the organizational form or status of a Party shall have no effect on the binding nature of this Consent Decree or its applicability.

5. **No Admission of Liability.** This Consent Decree is a settlement of disputed facts and law. It is not an admission or adjudication regarding any allegations by Communities in this case or of any fact or conclusion of law related to those allegations.

6. **Compliance Measures.**

    A.    <u>Permit Compliance</u>.  While this Consent Decree is in effect, Temco shall comply with the terms and conditions of the Permit and any successor NPDES permit(s) authorizing discharges of stormwater associated with industrial activity from the Facility.

    B.    <u>Grain and Grain Dust Elimination or Control</u>.

        i.    *Grain and Grain Dust Control Investigation*. Temco shall perform an investigation, through a qualified engineer, into the feasibility and effectiveness of options to eliminate or control the discharge of grain and visible grain dust into waters of the United States during operations at the Facility ("Grain Investigation"). The objectives of the Grain Investigation are two-fold: (1) to identify whether and how Temco can eliminate all direct and indirect discharges of grain and visible grain dust into waters of the United States from the Facility while continuing operations; and (2) to identify measures that constitute all known,

CONSENT DECREE - 5

available, and reasonable methods of preventing, controlling, and treating ("AKART") all direct and indirect discharges of grain and visible grain dust into waters of the United States from the Facility while continuing operations. AKART shall represent the most current methodology that can be reasonably required for preventing, controlling, or abating the pollutants associated with the discharge, and may incorporate AKART guidelines set forth in Washington State Department of Ecology ("Ecology") stormwater management manuals, to the extent appropriate. The second objective recognizes that the elimination of all direct and indirect discharges of grain and visible grain dust into waters of the United States from the Facility may not be feasible. To achieve the second objective, Temco, through a qualified engineer, shall conduct an investigation into AKART, which shall include, but shall not be limited to, consideration of the following methods: (1) dust skirts located at the bottom of the grain spout with dust collector vacuums; (2) dust skirts located at the bottom of the grain spout without dust collector vacuums; and (3) self-sealing discharge ("SSD") systems designed to close the grain spout outlet when not in use.

ii. *Grain and Grain Dust Control Report.* Temco, through a qualified engineer, shall prepare a report documenting its findings from the Grain Investigation as follows:

a. *Draft Grain Report.* Within two hundred and forty (240) days of the Effective Date, Temco shall prepare a draft report summarizing the results of the Grain Investigation ("Draft Grain Report") and shall provide the Draft Grain Report to Communities. The Draft Grain Report shall explain: (1) whether, based on the qualified engineer's professional judgment, Temco can eliminate all direct and indirect discharges of grain and grain dust into waters of the United States from the Facility while continuing operations; and (2) what measures, based on the qualified engineer's professional judgment, constitute AKART ("AKART Measures"). The Draft Grain Report shall group all AKART Measures into two categories: measures that would require operational changes ("Operational AKART Measures")

CONSENT DECREE - 6

and measures that would require facility changes necessitating capital expenditure(s) ("CapEx AKART Measures"). If the Draft Grain Report includes a determination that Temco can eliminate all direct and indirect discharges of grain and grain dust into waters of the United States from the Facility, it shall identify: (1) all measures Temco would have to implement to eliminate such discharges ("Elimination Measures"); and (2) a proposed timeline to fully implement the Elimination Measures that shall not extend beyond six hundred (600) days from the Effective Date. The Draft Grain Report shall also include a proposed timeline to fully implement all Operational AKART Measures that shall not extend beyond three hundred ninety (390) days from the Effective Date.

b.    *Comments on the Draft Grain Report.* Within thirty (30) days of Communities receiving the Draft Grain Report from Temco pursuant to Paragraph II.6.B.ii.a of this Consent Decree, Communities may submit comments to Temco and request changes to the Draft Grain Report. If Communities submits such comments, Temco shall pay six thousand dollars and no cents ($6,000.00) to Communities, to defray the costs of reviewing and commenting on the Draft Grain Report, within thirty (30) days of receiving Communities' comments and using the same instructions required for the payment in Paragraph II.9 of this Consent Decree. No payment shall be due if Communities does not provide comments to Temco within thirty (30) days of receiving the Draft Grain Report.

c.    *Final Grain Report.* Within three hundred thirty (330) days of the Effective Date, and following the process set forth in this Paragraph, Temco shall prepare a final report that summarizes the results of the Grain Investigation ("Final Grain Report"). If Communities submits timely written comments on the Draft Grain Report, then Temco shall ensure the Final Grain Report adopts all changes requested by Communities or, if Temco rejects a comment or suggestion, explains why Temco did not incorporate those comments or suggestions.

CONSENT DECREE - 7

Other than incorporating Communities' comments and suggestions in the Final Grain Report, or explaining why Temco rejected something, the Final Grain Report shall be unedited from the Draft Grain Report. If Communities does not provide comments on the Draft Grain Report within the allotted time, the Draft Grain Report shall become the Final Grain Report within three hundred thirty (330) days of the Effective Date. Temco shall provide Communities with a copy of the Final Grain Report as soon as it is finalized.

        iii.    *Final Grain Report Implementation.* If the Final Grain Report determines that Temco can eliminate all discharges of grain and grain dust and identifies Elimination Measures, Temco may elect to implement all Elimination Measures within the timeline specified in the Final Grain Report and Paragraph II.6.B.ii.a of this Consent Decree. If Temco does not elect to implement all Elimination Measures, then Temco shall implement all Operational AKART Measures within the timeline specified in the Final Grain Report and Paragraph II.6.B.ii.a of this Consent Decree and shall comply with all obligations identified in Paragraphs II.6.B.iv and II.6.B.v of this Consent Decree below.

        iv.    *NPDES Permit Application and Efforts to Obtain an NPDES Permit.* If the Final Grain Report does not include Elimination Measures or Temco chooses not to implement all Elimination Measures, as allowed under Paragraph II.6.B.iii of this Consent Decree, then within three hundred ninety (390) days of the Effective Date, Temco shall submit a written application for an NPDES Permit ("Application") to Ecology. The Application shall seek authorization for discharges of grain and grain dust from the Facility into waters of the United States. The Application shall include the Final Grain Report (including the description of the CapEx AKART Measures therein). After submitting the Application, and so long as this Consent Decree remains in force, Temco shall: (1) work in good faith to ensure that all representations and documents provided to Ecology during the NPDES permitting process for the Facility are

CONSENT DECREE - 8

accurate; and (2) make all reasonable and good faith efforts to seek and promptly obtain an NPDES permit from Ecology that authorizes discharges of grain and grain dust from the Facility into waters of the United States ("Grain NPDES Permit").

v. *Additional AKART Implementation.* If the Final Grain Report does not include Elimination Measures or Temco chooses not to implement all Elimination Measures, as allowed under Paragraph II.6.B.iii of this Consent Decree, then Temco shall implement AKART measures as follows:

a. If Temco obtains the Grain NPDES Permit within one thousand six hundred ten (1,610) days of the Effective Date, Temco shall implement all CapEx AKART Measures and other AKART measures that Ecology includes in the Grain NPDES Permit within thirty (30) days of Ecology issuing the Grain NPDES Permit; or

b. If Temco has not obtained the Grain NPDES Permit within one thousand six hundred ten (1,610) days of the Effective Date, Temco shall implement all CapEx AKART Measures as identified in the Final Grain Report within one thousand six hundred forty (1,640) days of the Effective Date.

C. <u>Zinc Source Control</u>. Temco, through a qualified engineer, shall investigate sources of zinc in its stormwater discharges from the Facility and prepare and implement a report documenting its findings, as follows:

i. *Beginning Zinc Investigation.* Within sixty (60) days of the Effective Date, Temco shall begin an investigation into potential onsite sources of zinc in discharges of stormwater associated with industrial activity from the Facility, with the goal of identifying all such onsite sources of zinc ("Zinc Investigation").

ii. *Completing Zinc Investigation and Preparing Draft Zinc Report.* Within one hundred and eighty (180) days of the Effective Date, Temco shall complete the Zinc

CONSENT DECREE - 9

Investigation, prepare a draft report summarizing results of the Zinc Investigation ("Draft Zinc Report"), and provide the Draft Zinc Report to Communities. The Draft Zinc Report shall propose, as necessary and appropriate to comply with the Permit, and based on the qualified engineer's professional judgment, best management practices ("BMPs"), including as appropriate structural source control BMPs, treatment BMPs, or other BMP(s), to address the onsite sources of zinc identified during the Zinc Investigation ("Proposed BMPs"). The Draft Zinc Report shall include a proposed timeline to fully implement the Proposed BMPs that shall not extend beyond four hundred and twenty (420) days from the Effective Date but that otherwise may account for factors that may have an impact on the timeline for implementation of the Proposed BMPs, such as engineering design, permitting, contracting, procurement, installation, and commissioning, as applicable.

iii.    *Comments on the Draft Zinc Report.* Within thirty (30) days of Communities receiving the Draft Zinc Report from Temco, Communities may submit comments to Temco and request changes to the Draft Zinc Report. If Communities submits such comments, Temco shall pay six thousand dollars and no cents ($6,000) to Communities to defray the costs of reviewing and commenting on the Draft Zinc Report, within thirty (30) days of receiving Communities' comments and using the same instructions required for the payment in Paragraph II.9 of this Consent Decree. No payment shall be due if Communities does not provide comments to Temco within thirty (30) days of receiving the Draft Zinc Report.

iv.    *Final Zinc Report.* Within two hundred and forty (240) days of the Effective Date, and following the process set forth in this Paragraph, Temco shall prepare a final zinc report that summarizes the results of the Zinc Investigation ("Final Zinc Report"). If Communities timely submits written comments on the Draft Zinc Report, then Temco shall ensure the Final Zinc Report adopts all changes requested by Communities or, if Temco rejects a

CONSENT DECREE - 10

comment or suggestion, explains why Temco did not incorporate those comments or suggestions. Other than incorporating Communities' comments and suggestions into the Final Zinc Report, or explaining why Temco rejected them, the Final Zinc Report shall be unedited from the Draft Zinc Report. If Communities does not provide comments on the Draft Zinc Report within the allotted time, the Draft Zinc Report shall become the Final Zinc Report within two hundred forty (240) days of the Effective Date. Temco shall provide Communities with a copy of the Final Zinc Report as soon as it is finalized.

v.    *Final Zinc Report Implementation*. Temco shall fully implement the Proposed BMPs in the Final Zinc Report within the timeline specified in the Final Zinc Report and Paragraph II.6.C.ii of this Consent Decree.

D.    Stormwater Pollution Prevention Plan Update.

i.    Within sixty (60) days of the Effective Date, Temco shall update the Facility site map and sampling plan set forth in Temco's Stormwater Pollution Prevention Plan for the Facility ("SWPPP") to add a new sampling location on the shipping pier identified in accordance with Paragraph II.6.E.i of this Consent Decree (below).

ii.    Within three hundred and thirty (330) days of the Effective Date, Temco shall update the SWPPP to include measures to identify and eliminate illicit discharges, as that term is defined in the Permit, of grain and grain dust from the Facility to stormwater conveyances, surface waters of the State, and groundwaters of the State. The Permit defines illicit discharges, as relevant, to mean discharges that are not composed entirely of stormwater except such discharges authorized pursuant to a separate NPDES permit.

iii.    Within sixty (60) days of the Effective Date, Temco shall update the SWPPP to ensure future compliance with all applicable requirements of Condition S6.C.2 of the Permit.

CONSENT DECREE - 11

iv.    Within sixty (60) days of the Effective Date, Temco shall update the SWPPP to recite Level Two and Level Three Corrective Action requirements as they are stated in the Permit, including but not limited to the requirement that Temco triggers a Level Two or Level Three Corrective Actions for a parameter when Temco exceeds the benchmark value for that parameter for multiple quarters during a calendar year (tallied facility-wide). The update required in this Paragraph shall include the following language "By way of example, if Temco exceeds the zinc benchmark at Monitoring Point A during the first quarter, exceeds the zinc benchmark at Monitoring Point C during the second quarter, and exceeds the zinc benchmark at Monitoring Point D during the third quarter, Temco has triggered a Level Three Corrective Action."

E.    Other Compliance Provisions.

i.    Within sixty (60) days of the Effective Date, Temco shall submit an "Industrial Stormwater General Permit Discharge/Sampling Point Update Form" to Ecology to designate a new, representative sampling location for the uncovered areas of the shipping pier in Discharge Area F at the Facility (as identified in the Facility map attached hereto as Exhibit 1). Also within sixty (60) days of the Effective Date, Temco shall begin sampling at that new sampling location, and reporting those sample results to Ecology, in accordance with all applicable Permit requirements. In addition, Temco shall continue sampling at that new sampling location, and reporting those sample results to Ecology, in accordance with all applicable Permit requirements for the remaining life of this Consent Decree.

ii.    Within one (1) year of the Effective Date, and for the entirety of Drainage Area A (as identified on the Facility map attached hereto as Exhibit 1), Temco shall remove accumulated solids from storm drain lines, conduct line cleaning operations, and dispose of removed storm drain solids and liquids, in accordance with Condition S6.C.2.d of the Permit.

CONSENT DECREE - 12

Also within one (1) year of the Effective Date, Temco shall sample and analyze storm drain solids and prepare a Solids Monitoring Report in accordance with Conditions S6.C.2.e and S6.C.2.f of the Permit.

iii.    While this Consent Decree remains in force, on each occasion that Temco samples stormwater discharges at the Facility under the requirements of Conditions S4 and S5 of the Permits, qualified sampling personnel shall walk the full length of Drainage Area B starting at the edge of Drainage Area A and walking to the edge of Drainage Area C (as identified on the Facility map attached hereto as Exhibit 1) to observe any and all discharges of stormwater associated with industrial activity from that area. If Temco observes any discharges of stormwater associated with industrial activity from Drainage Area B, it shall collect a sample of the discharge in accordance with all applicable Permit requirements. Temco shall include any and all sampling results from discharges of stormwater associated with industrial activity from Drainage Area B in the subsequent quarterly Discharge Monitoring Report for the Facility in accordance with all applicable Permit requirements.

iv.    *Information Sharing*. While this Consent Decree is in effect, Temco shall forward to Communities copies of all Permit-related documents that Temco submits to, or receives from, Ecology during the previous calendar quarter. Temco shall forward such copies to Communities no later than forty-five (45) days following the conclusion of each calendar quarter, pursuant to the Notice provisions in Paragraph II.13 of this Consent Decree. Also while this Consent Decree is in effect, Temco shall forward to Communities copies of all documents that Temco submits to, or receives from, Ecology related to Temco's Application and efforts to obtain an NPDES permit as set forth in Paragraph II.6.B.iv of the Consent Decree. Temco shall forward such copies to Communities no later than fourteen (14) days after submitting the document to or receiving the document from Ecology.

CONSENT DECREE - 13

7. **Environmental Benefit Projects.** Within thirty (30) days of the Effective Date, Temco shall pay three hundred twenty thousand dollars and no cents ($320,000.00) to the Nisqually Land Trust for one or more projects benefiting water quality and/or aquatic habitat in Puget Sound south of Vashon Island and/or any tributaries thereto as described in Exhibit 2 to this Consent Decree. Temco shall make the payment required by this Paragraph by check made payable and mailed to the Nisqually Land Trust, 1420 Marvin Road NE, Suite C PMB 243, Lacey, Washington 98516. Correspondence with the check shall bear the notation "Communities for a Healthy Bay v. Temco, LLC, Clean Water Act Settlement." Temco shall promptly notify Communities pursuant to the notice provisions in Paragraph II.13 of the Consent Decree when Temco makes the payment required by this Paragraph.

8. **Stipulated Future Payments.** In addition to the payment required by Paragraph II.7 of this Consent Decree, Temco shall pay one thousand dollars and no cents ($1,000) to the Nisqually Land Trust for one or more projects benefiting water quality and/or aquatic habitat in Puget Sound south of Vashon Island and/or any tributaries thereto for each failure by Temco to meet any deadlines or obligations imposed by Paragraph II.6 of this Consent Decree. Temco shall make any payments required by this Paragraph within thirty (30) days of the event that triggers the payment obligation. Temco shall make any payments required by this Paragraph by check made payable and mailed to the Nisqually Land Trust, 1420 Marvin Road NE, Suite C PMB 243, Lacey, Washington 98516. Correspondence with the check shall bear the notation "Communities for a Healthy Bay v. Temco, LLC, Clean Water Act Settlement," and shall indicate that the payment is to support one or more projects benefiting water quality and/or aquatic habitat in Puget Sound south of Vashon Island and/or any tributaries thereto as described in Exhibit 2 to this Consent Decree. Temco shall promptly notify Communities pursuant to the notice provisions in Paragraph II.13 of this Consent Decree every time Temco makes a payment

CONSENT DECREE - 14

required by this Paragraph.

9.    **Reimbursement of Litigation Expenses.** Within thirty (30) days of the Effective Date, Temco shall pay Communities one hundred seventy-nine thousand two hundred eighty-two dollars and sixteen cents ($179,282.16) for litigation expenses incurred in this matter. Temco shall make the payment required by this Paragraph via electronic funds transfer to the Washington IOLTA trust account maintained by Kampmeier & Knutsen, PLLC, Communities' attorneys in this case. Within seven (7) days of the Effective Date of this Consent Decree, Communities shall, through counsel, provide to counsel for Temco the information necessary to make the electronic funds transfer required by this Paragraph. Before finalizing the payment, Temco shall contact Kampmeier & Knutsen, PLLC, counsel for Communities, via telephone to confirm the bank account information and routing number of the account designated to receive the payment required by this Paragraph. Temco shall not direct the payment required by this Paragraph to any other bank account or recipient unless the Parties seek and the Court issues an order modifying this Paragraph of the Consent Decree. Temco shall notify Communities pursuant to the notice provisions in Paragraph II.13 of this Consent Decree when Temco makes the payment required by this Paragraph.

10.    **Settlement and Release.**

A.    As of the Effective Date, Communities releases Temco and its members, owners, officials, agents, representatives, officers, directors, employees, successors, and assigns from all Clean Water Act claims for the kinds of violations alleged in the Notice Letter and Complaint that occur or have occurred before the Termination Date. With respect to claims released, enforcement of this Consent Decree is Communities' exclusive remedy for any violation of its terms. Nothing in this Consent Decree prevents or shall be construed to prevent Communities from suing or taking other action to enforce the CWA against Temco for: any

CONSENT DECREE - 15

violations of the CWA that occur after the Termination Date; any violations of the CWA that do not directly involve the allegations in the Notice Letter or Complaint; and any alleged violation of the CWA at any of Temco's other facilities.

B.     As of the Effective Date, Temco releases Communities and its members, officials, agents, representatives, officers, directors, employees, successors, and assigns from all claims related to pollution from the Facility or the subject matter in the Notice Letter and Complaint that arose or are based on actions that occurred prior to the Effective Date, including all claims for costs, attorney fees, and other litigation expenses of any kind through the Effective Date that Temco has or could have had against Communities or its members, officials, agents, representatives, officers, directors, employees, successors, and assigns.

11.     **Retention of Jurisdiction and Dispute Resolution.** This Court retains jurisdiction over this matter to oversee and ensure compliance with this Consent Decree. While this Consent Decree remains in force, the Parties may reopen this case without filing fee to apply to the Court for any further order or relief that may be necessary regarding compliance with this Consent Decree or to resolve any dispute regarding this Consent Decree. Before applying to the Court under this Paragraph, the Parties must first seek to resolve the dispute themselves, as follows: the Party identifying or wishing to raise an issue or dispute must provide the other Party with written notice pursuant to the notice provisions in Paragraph II.13 of this Consent Decree, detailing the nature of the issue or dispute; and within thirty (30) days of receipt of such notice, the Parties shall meet and confer regarding the issue or dispute, and seek to develop a mutually agreed upon plan, including implementation dates, to resolve the issue or dispute. If the Parties are unable to resolve the dispute at that meeting or within thirty (30) days of receipt of the written notice, whichever comes first, either Party may file a motion with this Court to resolve the dispute or seek any other available relief.

CONSENT DECREE - 16

12.     **Fee-Shifting Provision.** The provisions in section 505(d) of the CWA, 33 U.S.C. § 1365(d), regarding awards of costs of litigation (including reasonable attorney and expert witness fees) to any prevailing or substantially prevailing Party, shall apply to any proceeding seeking to enforce the terms and conditions of this Consent Decree.

13.     **Notice.** All notices and other communications regarding this Consent Decree shall be in writing and shall be fully given by mailing via first class mail, postage pre-paid; by delivering the same by hand; or by sending the same via e-mail to the following addresses, or to such other addresses as the Parties may designate by written notice, provided that communications that are mailed shall not be deemed to have been given until three business days after mailing:

For Plaintiff Communities for a Healthy Bay:

Melissa Malott, Executive Director
Communities for a Healthy Bay
535 Dock Street, Suite 213
Tacoma, Washington 98402
mmalott@healthybay.org

**With a copy to:**

Emma Bruden
Kampmeier & Knutsen, PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
emma@kampmeierknutsen.com

CONSENT DECREE - 17

For Defendant Temco, LLC:

Vincent Hofer, General Manager
Temco, LLC
550 Dock Street
Tacoma, Washington 98402
vincent.hofer@chsinc.com

**With a copy to:**

Samuel Brown
Hunton Andrews Kurth
50 California Street, Suite 1700
San Francisco, CA 94111
slbrown@hunton.com


14.    **Modifications.** This Consent Decree may only be modified upon a writing signed by representatives for each Party and approved by the Court.


DATED this ___30th___ day of __January_____, 2026.



_Lauren King_____
Lauren King
United States District Judge

CONSENT DECREE - 18